ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| BERNICE MARIE COLÓN RIVERA<br><br>Recurrida<br><br><br>V.<br><br>RAMÓN LUIS DONES DÍAZ<br><br>Peticionario | TA2026CE00409 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: TJ2024RF00192<br><br>Sobre:<br><br>Alimentos |

Panel integrado por su presidenta, la Juez Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 18 de mayo de 2026.

Ramón L. Dones Díaz (señor Dones Díaz o peticionario demandado) solicita la revisión de la *Resolución* que emitió el Tribunal de Primera Instancia, Sala de Carolina (TPI) el 4 de marzo de 2026. Este Recurso debió ser Sentencia pues en la Resolución contra la que se trae, el TPI declaró *No Ha Lugar* la solicitud de reconsideración que presentó el peticionario y mantuvo la Sentencia que emitió el Tribunal el 3 de octubre de 2025 y notificada el 16 de octubre de 2025, mediante la cual le impuso al peticionario el pago de todos los gastos de su hija menor. Atendemos el Recurso como Apelación, pero mantenemos el alfanumérico asignado al caso.

Por los fundamentos que exponemos, *Revocamos* la resolución recurrida.

## I.

El 11 de diciembre de 2024 la señora Bernice Marie Colón Rivera (señora Colón Rivera o recurrida) instó una demanda contra Ramón Luis Dones Díaz para reclamar alimentos para la hija menor de edad de ambos.

El 7 de enero de 2025, la parte demandante señora Colón Rivera presentó una *Moción Solicitando Citación por Edicto.* Alegó que el señor Dones Díaz no colaboró para ser emplazado. Indicó que, según la declaración jurada de la emplazadora Cahineé Fernández Medina, hubo contacto con el demandado vía telefónica, pero este indicó que se encontraba fuera del país. Mencionó que el señor Dones Díaz se encontraba en Puerto Rico, porque se relacionó con la menor durante el periodo de Navidad. Sostuvo que, debido a los días festivos y lo cercano de la vista, no pudo obtener un diligenciamiento positivo. Ante ello, solicitó la expedición del emplazamiento por edictos para ser notificada a la dirección postal conocida en: PO Box 371825 Cayey, PR 00736.

El 13 de enero de 2025, el TPI autorizó el emplazamiento por edicto. El 5 de febrero de 2025, la recurrida sometió al TPI la declaración jurada de la publicación del edicto el 28 de enero de 2025 y el envío por correo certificado el 4 de febrero de 2025 al demandado en el PO Box 371825, Cayey PR 00736[1].

El 19 de marzo de 2025 se celebró una vista. Compareció la señora Colón Rivera, pero no el demandado Dones Díaz. El 24 de marzo 2025, la Examinadora de Pensiones Alimentarias (EPA) rindió un Informe en el que le imputó al demandado el salario mínimo federal. Calculó una pensión ajustada a $493.00 por la

---

[1] SUMAC TPI, entrada 14.

reserva legal de ingreso, más el 33% de los gastos médicos. Reseñaló la vista para el 14 de mayo de 2025.

El 24 de marzo de 2025, la señora Colón Rivera interpuso una *Moción Informativa* para indicar que el correo electrónico que le brindó el recurrido en: donesramon78@gmail.com aparecía que no existía. Manifestó que identificó otro correo electrónico del recurrido como: donesramon@gmail.com, al cual se le enviaron todos los documentos.[2] Ese mismo día, la demandante solicitó que se le anotara la rebeldía al señor Dones Díaz. La moción fue notificada a los mencionados correos electrónicos[3].

El 25 de marzo de 2025, el foro primario le anotó la rebeldía al señor Dones Díaz y notificó la orden a la dirección postal en Cayey.[4]

El 27 de mayo de 2025, se celebró la vista sobre fijación de pensión alimentaria. Según el *Acta*[5] que emitió la EPA, el señor Dones Díaz no compareció, por lo que, reseñaló la audiencia de alimentos para el 16 de junio de 2025.

El 16 de junio de 2025 se celebró la vista. De acuerdo con el *Informe*[6] que emitió la EPA, la demandante Colón Rivera, compareció representada por su abogada. El señor Dones Díaz, compareció por derecho propio e informó su dirección de correo electrónico. Surge del informe que la vista de alimentos se celebró por videoconferencia desde las 2:20 p.m. hasta las 2:30 p.m. La EPA realizó un recuento de la pensión provisional fijada, más recomendó el reseñalamiento de la vista de alimentos para el día 2 de septiembre de 2025, a las 10:30 a.m. Indicó que el padre

---

[2] Certiorari, apéndice SUMAC TA documento con entrada 24.
[3] SUMAC TPI, entrada 26.
[4] SUMAC TPI, entrada 31.
[5] SUMAC TPI, entrada 38.
[6] Certiorari, apéndice SUMAC TA documento con entrada 42, ver, además, entrada 67 *Informe de Reconsideración*.

debía presentar su Planilla de Información Personal y Económica (PIPE) en o antes del 30 de junio de 2025 y enviar copia a la otra parte, con la evidencia de ingresos y la planilla de contribución sobre ingresos para el año 2024, junto con la forma W-2 o formas 480. Este informe solamente se le notificó a la abogada de la demandante y a la examinadora de pensiones. No se le notificó al demandado a la dirección de correo electrónico que este informó.

El 7 de julio de 2025, el foro primario emitió una *Orden* en la cual aprobó el Informe de Pensión Alimentaria. A su vez, le concedió lo siguiente:

> "**5** días finales al demandado para presentar su PIPE juramentada so pena de encontrarlo incurso en desacato e imponerle severas sanciones. No se concederán más reseñalamientos. La parte que cause reseñalamiento se le impondrán severas sanciones."[7] (Énfasis nuestro).

Esa orden se le notificó al señor Dones Díaz a la dirección en PO Box 371825, Cayey, Puerto Rico, 00736, mas no se le envió por correo electrónico.

El 25 de agosto de 2025, Colón Rivera presentó una *Urgentísima Moción en Solicitud de Orden.* En síntesis, alegó que al demandado se le anotó la rebeldía y que este no presentó su Planilla de Información Personal y Económica, ni contestó el requerimiento de producción de documentos y que continúa con el incumplimiento de los procedimientos. Solicitó que se le ordene a la EPA a calcular la pensión alimentaria imputando la **totalidad** de los gastos de la menor al demandado. Además, solicitaron sanciones para el demandado.[8]

---

[7] SUMACT TPI, entrada 44.
[8] Certiorari, apéndice SUMAC TA documento con entrada 45.

El 26 de agosto de 2025, el TPI le ordenó al demandado que en 5 días replicara, so pena de conceder todo lo solicitado e indicó que se le impondrán severas sanciones.[9]  La orden fue notificada a la dirección postal en Cayey, mas no al correo electrónico.

Transcurrido ese término, el 5 de septiembre de 2025, la demandante-recurrida presentó una *Moción Para que se Dicte Orden*.  Allí reiteró el incumplimiento del demandado con las órdenes del tribunal y volvió a solicitar que se le ordene a la EPA a calcular la pensión alimentaria imputando la totalidad de los gastos de la menor al demandado.

Ese día 5 de septiembre, notificado el día 8 de septiembre de 2025, el juez de instancia le ordenó a la Examinadora de Pensiones Alimentarias a calcular la pensión alimentaria **imputando la totalidad de los gastos de la menor al demandado**.  Esa orden fue notificada al señor Dones Díaz a la dirección postal en Cayey, pero no al correo electrónico.[10]

Tras ello, el 3 de octubre de 2025, la EPA rindió un Informe.  Manifestó que la demandante Colón Rivera compareció a la vista del 2 de septiembre de 2025, pero el señor Dones Díaz no acudió.  La EPA particularizó los gastos de la menor y los gastos de la familia.  Tras ello, recomendó la siguiente pensión alimentaria:

> a. Desde el 11 de diciembre de 2024 hasta el 31 de mayo de 2025, una pensión de $2,252.00 mensual, dentro de los primeros cinco (5) días de cada mes, a través de ASUME.

> b. A partir del 1 de junio de 2025, una pensión de $2,174.00 mensual, dentro de los primeros cinco (5) días de cada mes, a través de ASUME.

En cuanto a los gastos médicos extraordinarios y gastos extraordinarios, indicó que "serán asumidos por el padre al 100%

---

[9] Íd., entrada 46.
[10] Certiorari, apéndice SUMAC TA documento con entrada 50.

a ser rembolsados en un término de treinta (30) días, previa notificación, consentimiento y presentación de evidencia de pago." Este informe fue notificado únicamente por correo electrónico a la parte demandante.[11]

Ese mismo 3 de octubre, notificada el 16 de octubre de 2025, el foro primario aprobó el informe de la EPA y dictó *Sentencia*, con la imposición de $1,000.00 de honorarios. Esa sentencia fue enviada al señor Dones Díaz al PO Box 371825, Cayey PR 00736.

El 30 de octubre de 2025 el señor Dones Díaz, sin someterse a la jurisdicción, compareció mediante representación legal. En la *Moción Informativa de Asistencia a la Parte Demandada* alegó que la sentencia fue notificada a la dirección postal donde reside su madre en Cayey, siendo su residencia en Guaynabo, hecho conocido por la demandante. A su vez, el 1ro de noviembre de 2025, presentó una *Moción de Reconsideración*. Informó su dirección de residencia en Guaynabo y que la demandante le mintió al Tribunal al expresar en su demanda que desconocía la dirección física y postal del demandado. Indicó que la demandante se comunicaba con él constantemente, que le entregaba a su hija para las relaciones paternofiliales. Manifestó que ambos estuvieron juntos en la graduación en mayo 2025 y que la demandante autorizó un viaje del demandado con su hija en junio de 2025.

El 3 de noviembre de 2025, el foro primario le concedió veinte (20) días a la demandante para replicar a la moción de reconsideración.

---

[11] Certiorari, apéndice SUMAC TA documento con entrada 51.

La demandante no respondió y el 25 de noviembre de 2025 el foro primario les ordenó a las partes a someter tres fechas para **la celebración de vista**.[12]  El 3 de diciembre de 2025 el señor Dones Díaz informó tres fechas disponibles para la vista ante la EPA.  Ese mismo día, el foro primario refirió la moción a la EPA.[13]

El 7 de febrero de 2026, el señor Dones Díaz sometió su PIPE con los anejos de sus ingresos y reiteró su solicitud de señalamiento de vista.[14] El 9 de febrero de 2026, el TPI le refirió la moción a la EPA.[15]  Así mismo, el 18 de febrero de 2026, el TPI les ordenó a las partes a someter tres (3) fechas para discusión de las mociones.[16]

Al día siguiente, el 10 de febrero de 2026, la EPA rindió un *Informe de Reconsideración* en el que recomendó que se declarara No Ha Lugar la reconsideración de Dones Díaz y que se mantenga la Sentencia emitida el 3 de octubre de 2025.  Allí narró lo ocurrido en la vista del 16 de junio de 2025, a la cual compareció el señor Dones Díaz, a saber:

> El demandado comparece por primera ocasión, señala estar de viaje con la menor por razón del deporte de volleyball. Se concederá un último señalamiento de vista para que el alimentante presente evidencia de los ingresos y su Planilla de Información Personal y Económica (PIPE). Como parte de las recomendaciones, y ante el hecho informado por el demandado de que se encontraba fuera del país, se le concedió la oportunidad de una nueva fecha de vista y un término adicional para presentar la PIPE.

> Mas adelante, relató lo siguiente:

> Recordemos que las vistas ante los examinadores son grabadas; por ello, se realiza una narración más detallada de lo ocurrido en la vista, utilizando principalmente dicha grabación. De esta surge que el alimentante compareció y se le indicó el propósito de la vista, que era la determinación de una pensión alimentaria permanente (2:26 p.m. DCR). El

---

[12] Certiorari, apéndice SUMAC TA documento con entrada 51.
[13] Íd., entradas 63 y 64.
[14] Certiorari, apéndice SUMAC TA documento con entrada 65.
[15] Íd., entrada 66.
[16] Íd., entrada 70.

demandado indicó que era su primera vez en la vista y **que no había recibido nada por correo electrónico para poder conectarse**. La licenciada Feliciano mencionó que tenía varios correos electrónicos del alimentante, y **se procedió a clarificar su dirección de correo electrónico**. Acto seguido, la suscribiente le expresó al demandado que debía presentar la PIPE (2:28 p.m. DCR), documento obligatorio en el cual debía consignar su información de ingresos y gastos. Se le explicó que dicho documento debía ser juramentado y que podía hacerlo de manera gratuita en la Secretaría del Tribunal. Además, se le indicó que debía incluir evidencia de ingresos, principalmente la planilla de contribución sobre ingresos del año 2024, junto con la forma W-2 o la forma 480, o el último talonario de ingresos si tenía patrono. El demandado aclaró que no tenía patrono (2:29 p.m. DCR). La examinadora le indicó que, en ese caso, debía presentar la planilla de contribución sobre ingresos del año 2024 y las formas 480, de haberlas recibido.

El demandado informó que llegaría a Puerto Rico el domingo siguiente y que se sentaría con las personas pertinentes para cumplir con lo requerido, indicando que había tratado de reunirse con su contable, pero había tenido problemas ya que este no le había enviado la información necesaria (2:29 p.m. DCR). Considerando lo anterior, se coordinó para que presentara el documento en o antes del 30 de junio de 2025. El demandado solicitó que el documento le fuera remitido a su correo electrónico (2:30 p.m. DCR), lo cual la licenciada Feliciano hizo durante la misma vista (2:30 p.m. DCR). El demandado confirmó haber recibido la PIPE (2:33 p.m. DCR), y al preguntársele nuevamente, reiteró que la había recibido (2:33 p.m. DCR).

La examinadora volvió a recalcar la importancia de la presentación del documento, advirtiéndole que el incumplimiento **podría conllevar la eliminación de alegaciones, imputación de ingresos u otras sanciones**. Se le explicó que era esencial someterse voluntariamente al proceso para poder determinar una pensión alimentaria conforme a derecho, enfatizando la importancia de la documentación para evaluar su situación económica (2:34 p.m. DCR). En la misma vista se coordinó la fecha del próximo señalamiento para el 2 de septiembre de 2025, a las 10:30 a.m., informándose que todo el descubrimiento de prueba debía realizarse con anterioridad y que ese día se determinaría la pensión alimentaria permanente. Se indicó que ambas partes contaban con tiempo suficiente para realizar descubrimiento de prueba, presentar la documentación necesaria y comparecer preparadas para una determinación final. Al preguntarse si existía alguna duda o pregunta adicional, ambas partes contestaron que no (2:35 p.m. DCR). (Énfasis nuestro).

Acto seguido, la EPA indicó que el demandado se sometió voluntariamente a la jurisdicción y que la pensión impuesta fue el resultado directo de una sanción válidamente impuesta por el juez de la sala de origen, a saber:

En resumen, del expediente surge que el demandado se sometió voluntariamente a la jurisdicción de este Tribunal al: comparecer sin reserva a la vista de alimentos; participar activamente del procedimiento; solicitar la remisión de la PIPE; aceptar términos y fechas de señalamiento; y no impugnar jurisdicción personal en su primera comparecencia. En consecuencia, el demandado renunció tácitamente a cualquier alegación posterior relacionada con defectos de emplazamiento, conforme a la doctrina establecida en 160 D.P.R. 714 y 162 D.P.R. 764, antes citados.

De igual forma, la alegación de error en el cálculo de la pensión alimentaria tampoco merece crédito. La determinación impugnada no se fundamentó en una presunta "asunción de capacidad económica", sino que fue el resultado directo de una sanción válidamente impuesta por el juez de la sala de origen ante el reiterado incumplimiento del demandado con las órdenes emitidas por el tribunal. Conforme a lo ordenado el 5 de septiembre de 2025, se instruyó a la Examinadora de Pensiones Alimentarias a calcular la pensión imputando la totalidad de los gastos de la menor al demandado, actuación que se realizó conforme a derecho. Así las cosas, no se cometió error alguno en el cómputo de la pensión.

Posteriormente, el 4 de marzo de 2026 el foro primario dictó una *Resolución.* Allí, entre otros, declaró No Ha Lugar la *Moción de Reconsideración* que presentó el demandado Dones Díaz, aprobó el Informe y las recomendaciones que presentó la Examinadora de Pensiones Alimentarias el 9 de febrero de 2026 y mantuvo la *Sentencia* del 3 de octubre de 2025, notificada el 16 de octubre de 2025.

Insatisfecho con la determinación, Dones Díaz acudió a este foro intermedio mediante un recurso de certiorari. En este alegó que incidió el foro primario en lo siguiente:

Primero: el TPI cometió error craso de derecho, y abusó de su discreción, al denegar la solicitud de reconsideración y confirmar una sentencia de

alimentos emitida sin jurisdicción sobre la persona, en violación al debido proceso de ley, a las reglas de procedimiento civil, y a la ley orgánica de asume.

Segundo: el TPI cometió error craso de derecho, de todo termino jurisdiccional, sin orden previa del tribunal para ello, sin celebrar una vista y en contravención a la ley orgánica de asume y a las reglas de procedimiento civil.

Tercero: el TPI cometió error craso de derecho, y abusó de su discreción al permitir la actuación *ultravires* de la EPA, que apartándose de su función imparcial, asumió un rol adversativo, propio de la parte recurrida, lo cual vulneró el debido proceso de ley del peticionario, particularmente ante la incomparecencia de la recurrida oponerse a la reconsideración dentro del término ordenado por el propio tribunal.

Le concedimos hasta el 4 de mayo a las 4:30 pm a la recurrida para presentar la oposición al recurso y esta no lo presentó, por lo que, damos por perfeccionada la presente causa.

## II.

## A.

Es norma reiterada que los jueces de instancia tienen gran flexibilidad y discreción para lidiar con el manejo diario y tramitación de los asuntos judiciales. BPPR v. SLG Gómez-López, 213 DPR 314, 333 (2023); In re Collazo I, 159 DPR 141, 150 (2003). Ahora bien, la discreción cede en las circunstancias en las que se demuestre que éstos actuaron con prejuicio o parcialidad; incurrieron en un craso abuso de discreción, o se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo y que la intervención en esa etapa evitaría un perjuicio sustancial a la parte afectada por su determinación. BPPR v. SLG Gómez-López, *supra*, págs. 334-335; Rivera et al. v. Arcos Dorados et al., 212 DPR 194, 210 (2023).

**B.**

Nuestra jurisdicción reconoce que los menores tienen un derecho fundamental a recibir alimentos que emana de la cláusula constitucional del derecho a la vida consagrado en la Carta de Derechos de la Constitución de Puerto Rico. Díaz Rodríguez v. García Neris, 208 DPR 706, 717 (2022); De León Ramos v. Navarro Acevedo, 195 DPR 157, 169 (2016).

A tenor con ello, el Artículo 590 del Código Civil de 2020, establece que las madres y los padres, por razón de la patria potestad, tienen, entre otros, el deber de alimentarlo y proveerle lo necesario para su desarrollo y formación integral. 31 LPRA sec. 7242. Como la obligación de alimentar al menor es **inherente** a la maternidad y la paternidad, esta obligación es personal de cada uno de los excónyuges por lo que debe ser satisfecha del propio peculio y de forma **proporcional a sus recursos y a la necesidad del menor** una vez decretado el divorcio. Díaz Rodríguez v. García Neris, *supra*; Pesquera Fuentes v. Colón Molina, 202 DPR 93, 108 (2019). Este esquema conlleva hacer un balance entre los intereses del menor y la **capacidad económica** de los responsables de costear sus necesidades. Pesquera Fuentes v. Colón Molina, *supra*. La determinación de la cuantía de los alimentos corresponde al prudente arbitrio del juzgador, quien debe velar porque la cuantía que se establezca cumpla con el principio de proporcionalidad. Santiago, Maisonet v. Maisonet Correa, 187 DPR 550, 562 (2012).

**C.**

Para fijar la pensión, el Artículo 16 de la Ley Orgánica de la Administración para el Sustento de Menores (Ley de ASUMe), Ley Núm. 5 de 30 de diciembre de 1986, según enmendada. 8 LPRA

sec. 515, permite el descubrimiento de información de forma compulsoria y las sanciones. En lo pertinente, este indica así:

> En los procedimientos judiciales relacionados con pensiones alimenticias, el descubrimiento sobre la situación económica del alimentante y alimentista será compulsorio.
>
> De solicitarlo cualesquiera de las partes, la presentación de una copia certificada de la planilla de contribución sobre ingresos, así como una certificación patronal del sueldo o salario, será compulsoria.
>
> La Oficina de Administración de los Tribunales preparará un formulario para servir de guía respecto de la información mínima requerida sobre la situación económica de las partes, las necesidades del alimentista y la capacidad de pago del alimentante. El formulario completado y juramentado, u otro documento similar, también juramentado, que contenga toda la información requerida deberá radicarse en la secretaría del tribunal y notificarse a la otra parte con antelación a la vista y sujetará al declarante a las penalidades dispuestas para el delito de perjurio.
>
> La radicación del formulario no constituirá excusa respecto de la obligación de las partes de revelar todas las circunstancias que permitan determinar su particular situación económica.
>
> La radicación de este formulario o de otro documento similar no constituirá impedimento para el uso de los mecanismos de descubrimiento de prueba, según establecido en las Reglas de Procedimiento Civil, Ap. V del Título 32. […]
>
> Cuando se utilicen los mecanismos regulares de descubrimiento de prueba, no se concederán prórrogas para cumplir con los términos establecidos por las Reglas de Procedimiento Civil, Ap. V del Título 32, excepto mediante la demostración rigurosa de justa causa.
>
> Las sanciones provistas en las Reglas de Procedimiento Civil, Ap. V del Título 32, por negarse a descubrir o por contestar en forma evasiva las preguntas formuladas como parte del procedimiento de descubrimiento de prueba, serán aplicadas con todo el rigor, incluyendo la imposición de honorarios de abogado.

En cuanto a las sanciones por incumplimiento, la Regla 44.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.2, establece, en lo aquí pertinente, como sigue:

> El tribunal podrá imponer costas interlocutorias a las partes y sanciones económicas en todo caso y en cualquier etapa a una parte o a su representante legal por conducta constitutiva de demora, inacción, abandono, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia. […]

Así mismo, la Regla 34 de Procedimiento Civil, *supra*, rige las controversias en torno al descubrimiento; negativa a descubrir lo solicitado y sus consecuencias. En particular, la Regla 34.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 34.2, provee para que una parte presente una moción para que el tribunal le ordene a descubrir lo solicitado, luego de que la parte promovente haya realizado con prontitud esfuerzos razonables y de buena fe con la parte adversa y ésta se niega a descubrir lo solicitado. El inciso (c) indica que:

> Si se declara "con lugar" la moción, el tribunal, después de dar a las partes la oportunidad de ser oídas, podrá imponer a la parte o deponente que incumplió, o a la parte o al abogado o abogada que haya aconsejado tal conducta, o a ambos, el pago a la parte promovente del importe de los gastos incurridos en la obtención de la orden, incluyendo honorarios de abogado, a menos que el tribunal determine que existía una justificación válida para oponerse a la solicitud o que dentro de las circunstancias, el pago de los gastos resultaría injusto.

A su vez, la Regla 34.3 de Procedimiento Civil, 34 LPRA Ap. V, R. 34.3, fija las medidas que el tribunal puede tomar para propiciar el cumplimiento de las partes con el descubrimiento de prueba solicitado. En lo aquí pertinente, la Regla 34.3 autoriza al tribunal a emitir una orden **de desacato**. A su vez, permite otras consecuencias, a saber:

> (b) *Otras consecuencias*. Si una parte […] deja de cumplir una orden para llevar a cabo o permitir el descubrimiento de prueba […] el tribunal podrá dictar, con relación a la negativa, todas aquellas órdenes que sean justas; entre ellas las siguientes:

(1) Una orden para que las materias comprendidas en las órdenes antes mencionadas o cualesquiera otros hechos designados por el tribunal, sean considerados como probados a los efectos del pleito, en conformidad con la reclamación de la parte que obtuvo la orden.

(2) Una orden para impedir a la parte que incumpla que sostenga o se oponga a determinadas reclamaciones o defensas, o para prohibirle la presentación de determinada materia en evidencia.

(3) Una orden para eliminar alegaciones o parte de ellas, o para suspender todos los procedimientos posteriores hasta que la orden sea acatada, para desestimar el pleito o procedimiento, o cualquier parte de ellos, o para dictar una sentencia en rebeldía contra la parte que incumpla.
[…]

(6) Una orden, bajo las condiciones que estime justas, para imponer a cualquier parte, testigo o abogado o abogada una sanción económica como resultado de sus actuaciones.

A través del inciso (b)(3) el tribunal puede sancionar con la eliminación total o parcial de las alegaciones. Sin embargo, igual que la desestimación de la demanda, la eliminación de las alegaciones y la rebeldía son el castigo más severo para la parte que declina obedecer una orden para descubrir prueba. Mitsubishi Motor v. Lunor y otros, 212 DPR 807, 818 (2023); HRS Erase v. CMT, 205 DPR 689, 699 (2020).

Por tal razón, antes de emitir estas órdenes, tribunal tiene que ejecutar el orden de prelación que establece la Regla 39.2(a) de Procedimiento Civil, 32 LPRA Ap. V. Primero, tiene que apercibir de la   situación a la representación legal de la parte y concederle la oportunidad para responder. Si el representante legal no responde al apercibimiento, el tribunal le impondrá sanciones y le notificará directamente a la parte sobre el asunto.   Íd., ver además, Mitsubishi Motor v. Lunor y otros, *supra.* Una vez que la parte haya sido informada o apercibida de la situación y de las consecuencias que el incumplimiento conlleva, deberá corregirla

dentro del término que el tribunal de instancia le conceda. Íd. Cumplido este trámite, el tribunal se encontrará en posición para imponer la sanción que corresponda.  Íd. Las sanciones tomadas respecto al descubrimiento de prueba no pueden tomarse de manera liviana pues "son medidas drásticas que chocan con nuestra política pública a favor de que los casos se ventilen en sus méritos". Mitsubishi Motor v. Lunor y otros, *supra;* HRS Erase v. CMT, *supra.*

De otro lado, en cuanto al descubrimiento de prueba, en los casos de **alimentos**, existe una excepción al requisito de descubrir información sobre la situación económica.  El alimentante queda exento del requisito de someter información sobre sus ingresos en la planilla de información personal y económica, **si acepta que tiene capacidad económica** para proveer alimentos.  Chévere v. Levis I, 150 DPR 525, 545 (2000), ver, además*,* Díaz Rodríguez v. García Neris, *supra,* pág. 719*.*  Por lo tanto, en esos casos solo resta determinar la suma justa y razonable que ha de ser impuesta como pensión. Díaz Rodríguez v. García Neris, *supra*.  En atención a lo anterior, el Tribunal Supremo resolvió en Santiago, Maisonet v. Maisonet Correa, *supra*, pág. 571, que en casos en que el alimentante **acepta** capacidad económica, procede entonces que el alimentante pague el 100% de los gastos razonables de los menores.

De otro lado, nuestro ordenamiento jurídico también reconoce ciertas instancias en las que se le **imputará ingresos** al alimentante. El Artículo 11 de la Ley de ASUMe, relacionado al procedimiento administrativo expedito, provee que se puede imputar ingresos a, "la parte que se negare a descubrir la información dentro del término requerido o no contestare

debidamente o con evasivas, el ingreso promedio del oficio, ocupación, profesión del alimentante, según toda la prueba disponible, incluyendo estimados, estudios y proyecciones de ingresos, gastos, estilo de vida y cualquier otra prueba pertinente y continuar con el procedimiento administrativo autorizado por esta Ley, incluyendo hacer una determinación en rebeldía." 8 LPRA sec. 510.

Así mismo, el Artículo 8 (1) (a) del Reglamento 9535, conocido por *Guías Mandatorias para fijar y modificar pensiones alimentarias en Puerto Rico,* (Guías Mandatorias), del 15 de febrero de 2024, disponen que el juzgador imputará ingresos a la **persona custodia** o **a la persona no custodia** cuando, entre otros, "[e]xistan indicios o señales de que el ingreso de la persona es mayor al que esta informa."

En estos casos, para fijar una pensión el Tribunal de Instancia puede tomar en cuenta, "el estilo de vida del alimentante, sus propiedades, su profesión y preparación académica, su historial de empleo y de ingresos, su experiencia laboral, su capacidad y aptitud para generar ingresos y otros factores similares para imputarle ingresos al alimentante razonablemente, más allá de lo que éste alegue o intente probar sobre el particular." Argüello v. Argüello, 155 DPR 62, 74 (2001), citando a López v. Rodríguez, 121 DPR 23, 33 (1988). Ver, además, Díaz Rodríguez v. García Neris, *supra,* pág. 719, Santiago, Maisonet v. Maisonet Correa, *supra*, pág. 566; Chévere Mouriño v. Levis Goldstein, 152 DPR 492, 502, 505 (2000).

**D.**

Sabido es que la Constitución de Puerto Rico reconoce una serie de derechos, incluido entre estos el debido proceso de ley.

Const. ELA, Art. II, 1 LPRA sec. 7. Esta garantía tiene dos (2) vertientes la sustantiva y *la procesal*. Katirias's Café v. Mun. de San Juan, 2025 TSPR 33, 215 DPR __ (2025). La vertiente sustantiva del debido proceso de ley busca proteger los derechos fundamentales de la persona, mientras que la vertiente procesal le impone al Estado la obligación de garantizar un proceso justo y equitativo cuando se interfiera con los intereses de libertad y de propiedad del individuo. Fuentes Bonilla v. ELA et al., 200 DPR 364, 394 (2018). Para satisfacer las exigencias mínimas del debido proceso de ley, en su vertiente procesal, nuestra jurisprudencia ha reiterado que se deben cumplir con los requisitos de: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se base en el récord. Katirias's Café v. Mun. de San Juan, *supra*; Vázquez González v. Mun. de San Juan, 178 DPR 636, 643 (2010); Hernández v. Secretario, 164 DPR 390, 395-396 (2005); Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 DPR 881 889 (1993).

Para salvaguardar el debido proceso de ley, se exige que, como mínimo, en todo proceso adjudicativo se realice una notificación adecuada. PVH Motor v. ASG, 209 DPR 122, 130-131 (2022); Vázquez González v. Mun. San Juan, *supra*. Ello es así pues la falta de una notificación adecuada y a tiempo de cualquier resolución, orden o sentencia, podría afectar el derecho de una parte a cuestionar la resolución, orden o sentencia dictada, enervando así las garantías del debido proceso de ley. Caro v. Cardona, 158 DPR 592, 599 (2003); Falcón Padilla v Maldonado Quirós, 138 DPR 983, 990 (1995).

En cuanto a las notificaciones, las Directrices Administrativas para la Presentación y Notificación Electrónica de Documentos Mediante el Sistema Unificado de Manejo y Administración de Casos y el Formulario Interactivo (Según Enmendadas), provee para la notificación electrónica, a saber:

IX. NOTIFICACIONES ELECTRÓNICAS

1. Se notificarán por **medios electrónicos las órdenes**, resoluciones, decretos y sentencias que emita el Tribunal, así como cualquier documento que el Secretario o la Secretaria deba notificar durante un procedimiento civil, o proceso apelativo, a menos que por orden judicial se disponga de otra manera. A través del SUMAC y del Formulario Interactivo, se notificará cada documento a la dirección electrónica de la abogada o del abogado registrada que surge del RUA para recibir notificaciones y para los y las litigantes por derecho propio, a aquel correo electrónico registrado en el sistema.

2. […]

3. […]

4. Todo escrito que por orden judicial deba notificarse por otros medios se notificará por correo regular a la última dirección que se haya consignado en el expediente electrónico por las partes o sus representantes legales.
[…]

6. Si una de las partes en el proceso judicial comparece por derecho propio y consta su dirección de correo electrónico en el sistema, la presentación electrónica del documento constituirá la notificación que debe efectuarse entre partes. Será deber del abogado o de la abogada presentante notificar todo escrito que presente en el SUMAC a la dirección que haya consignado la parte en el expediente para fines de notificación, de no haber sido notificado a través del sistema. El sistema emite una notificación entre partes que permite corroborar las partes notificadas a través de la plataforma electrónica y la dirección de correo electrónico al que se envió el documento. Esta notificación deberá realizarse en la fecha de la presentación electrónica. Así lo hará constar y lo certificará en el escrito que presente en el SUMAC.
[……..] (Énfasis suplido).

**E.**

El emplazamiento es el mecanismo procesal a través del cual se le informa a la parte demandada sobre la existencia de una acción judicial presentada en su contra y se le requiere comparecer para formular la alegación que corresponda. Ross Valedón v. Hosp. Dr. Susoni et al., 213 DPR 481, 487 (2024); Rivera Marrero v. Santiago Martínez, 203 DPR 462, 480 (2019).   A pesar del riguroso cumplimiento con los requisitos del emplazamiento que exige nuestro ordenamiento procesal civil, el Tribunal Supremo de Puerto Rico ha reconocido que el derecho a ser emplazado es renunciable. Cirino González v. Adm. Corrección et al., 190 DPR 14, 37 (2014)*;* Peña v. Warren, 162 DPR 764, 778 (2004).  Una forma de efectuar tal renuncia es a través de la sumisión expresa o tácita del demandado a la jurisdicción del tribunal o de un foro administrativo. Íd*.* Específicamente, aquella parte que "comparece voluntariamente y realiza algún acto sustancial que la constituya parte en el pleito, se somete a la jurisdicción del tribunal". Íd. En esos casos, la comparecencia suple la omisión del emplazamiento y es suficiente para que el tribunal asuma jurisdicción. Cirino González v. Adm. Corrección et al., *supra;* Peña v. Warren, *supra.* De manera que, la comparecencia voluntaria suple la omisión del emplazamiento y es suficiente bajo las garantías del debido proceso de ley, para que el tribunal adquiera jurisdicción sobre la persona. Vázquez v. López, 160 DPR 714, 721 (2003).

A tenor con la antes mencionada normativa, evaluamos.

**III.**

En los señalamientos de error, discutidos en conjunto, el peticionario Dones Díaz adujo que solicitó reconsideración a la sentencia por falta de jurisdicción sobre su persona debido a un

emplazamiento por edicto defectuoso y en fraude al Tribunal. Expresó que a la fecha de la demanda la recurrida conocía la dirección del peticionario en Guaynabo, pues habían mantenido relaciones filiales y de pago de las necesidades de su hija. Señaló que se le violentó su debido proceso de ley, al privársele de la notificación adecuada de los procedimientos y de ser oído.

Arguyó, además que la recurrida le afirmó al TPI que el demandado no asumió capacidad económica, sin embargo, reclamó que se le impusiera una sanción extrema de imputarle el cien por ciento (100%) de los gastos. Sobre este aspecto, indicó que la determinación del TPI y de la EPA de imputarle capacidad y aceptación económica al peticionario, es contraria a derecho. Señaló que el TPI le impuso la sanción más extrema de imputarle capacidad económica, sin antes apercibirle ni sancionarle.

Aseveró también que la EPA rindió un informe de reconsideración sin celebrar la vista, contrario a lo ordenado por el TPI[17]. Indicó que, dentro de los poderes delegados a los Examinadores de Pensiones Alimentarias, no se halla el dirimir controversias de solitudes de reconsideración basadas en falta de notificación adecuada por emplazamiento defectuoso y fraudulento. De igual forma, adujo un examinador de pensiones que no tiene la autoridad de asumir el rol de abogado de una de las partes. Sostuvo, además, que la EPA solicitó que se reiterara la Sentencia emitida el 16 de octubre de 2025, la cual fue notificada a una dirección en Cayey que no le correspondía al peticionario. Destacó que el informe de la EPA no contiene determinaciones de hechos relacionados con la jurisdicción sobre el peticionario.

---

[17] Ver orden del 25 de noviembre de 2025, SUMAC entrada 51.

En síntesis, el peticionario cuestionó la determinación del foro primario de declarar sin lugar su moción de reconsideración fundamentada en la violación a su derecho a un Debido Proceso de Ley ante la falta de notificación adecuada de la Sentencia emitida el 3 de octubre de 2025, la falta de jurisdicción sobre la persona del TPI por llevarse a cabo un emplazamiento por edictos fraudulento mediante la utilización de falsedades y el cálculo desproporcionado e inadecuado de la pensión alimentaria establecida contrario a las guías de pensiones alimentarias y la ley. Le asiste la razón.

El 11 de diciembre de 2024, la recurrida señora Colón Rivera, interpuso una demanda de alimentos contra el señor Dones Díaz. Allí informó desconocer la dirección física y postal del demandado. Más adelante, en el proceso, a petición de la recurrida, el 25 de marzo de 2025, el Tribunal le anotó la rebeldía a Dones Díaz. El 16 de junio de 2025 la Examinadora de Pensiones celebró una vista por videoconferencia y el peticionario compareció por primera vez. Allí este brindó su dirección de correo electrónico e informó que estaba de viaje con la menor.

Surge del informe que rindió la EPA que ese día la funcionaria le indicó al señor Dones Díaz que debía suplir la Planilla de Información Personal y Económica (PIPE) y la evidencia de sus ingresos para en o antes del 30 de junio de 2025.[18] No obstante, a pesar de que el peticionario proveyó el correo electrónico, la EPA no le notificó ese informe de la vista del 16 de junio de 2025.

El 7 de junio de 2025 el Tribunal emitió una orden para que el demandado presentara su PIPE so pena de encontrarlo incurso en desacato e imponerse severas sanciones. No obstante, la orden

---

[18] SUMAC TPI entradas 42 y 67.

no le fue notificada al correo electrónico que ofreció el peticionario como lo requiere la sección IX de las Directrices Administrativas de SUMAC. Esta indica que se notificará "por **medios electrónicos las órdenes**, resoluciones, decretos y sentencias que emita el Tribunal". En ese aspecto, hubo defecto en las notificaciones.

El 26 de agosto de 2025, el TPI emitió otra orden al peticionario, pero tampoco la notificó al correo electrónico de este. Las subsiguientes órdenes del tribunal de instancia, emitidas los días 5 de septiembre de 2025, notificada el 8 de septiembre, así como la sentencia notificada el 16 de octubre de 2025, tampoco fueron notificadas al correo electrónico del demandado. De igual manera, la EPA rindió varios informes y tampoco los notificó al correo electrónico del demandado, a pesar de constarle que este había brindado una dirección de correo electrónico. Por tanto, la EPA y el foro primario, no realizaron la debida notificación de sus respectivas recomendaciones y órdenes, en detrimento al debido proceso de ley.

Independientemente a lo anterior, el foro primario, a petición de la parte peticionaria, le impuso como sanción al señor Dones Díez el pago de todos los gastos de la menor. Así que, el 16 de octubre de 2025, el foro primario acogió el informe de la EPA y notificó la Sentencia en la cual le imputó al demandado el pago de $2,252.00 mensuales desde el 11 de diciembre de 2024 hasta el 31 de mayo de 2025 y $2,174.00 mensuales a partir del 1 de junio de 2025. Luego de dictada la sentencia, el demandado compareció con su abogada y solicitó reconsideración.

El 25 de noviembre de 2025, el foro primario requirió que las partes sometieran tres (3) fechas para la celebración de una vista ante la EPA, el foro primario remitió el asunto a la EPA para

la celebración de una vista[19]. El señor Dones Díaz suplió las fechas disponibles, luego sometió la PIPE con los anejos de sus ingresos. En cambio, la demandante no ofreció las fechas requeridas para la celebración de la vista. Más adelante, sin celebrar la vista ordenada, la EPA rindió un informe en reconsideración en el que recomendó denegar la petición de reconsideración y reiterar la sentencia. Así lo hizo el Tribunal en la *Resolución* del 4 de marzo de 2026. Este acto, también es contrario a la directriz que el tribunal impartió y transgredió las nociones básicas del debido proceso de ley del peticionario.

En cuanto a la sanción que se le impuso al demandado, de pagar la totalidad de los gastos de la menor por no presentar su PIPE ni contestar el descubrimiento de pruebas, opinamos que esta medida fue drástica, excesiva y contraria a derecho.

Primero, reconocemos que el foro de instancia tiene la facultad de imponer sanciones progresivas para asegurar que las partes cumplan con sus deberes procesales. No obstante, la orden del TPI, de adjudicarle al demandado la totalidad de los gastos de la menor, constituye la sanción más severa que se puede imponer en un caso de alimentos.

Es norma reiterada que, antes de emitir una sanción tan radical como lo sería la eliminación de las alegaciones, la rebeldía, entre otras, se deben explorar otros métodos menos onerosos, como lo serían sanciones económicas o el desacato. Se puede encontrar a una parte incurso en desacato y se pueden emitir todas las órdenes que sean justas. En la eventualidad de que ocurra un posterior incumplimiento, entonces, puede el foro primario imponer sanciones más drásticas.

---

[19] Certiorari, apéndice SUMAC TA documento con entrada 51.

En este caso, aun cuando surgen amonestaciones escritas contra el demandado, estas no fueron notificadas a su correo electrónico, según antes expusimos. Tampoco se le impusieron sanciones menos rigurosas como disuasivo al cumplimiento. Esto es, el foro primario, como mínimo, debió agotar otros remedios menos severos contra el demandado para promover su cumplimiento. Por tanto, al ser la imputación de capacidad económica una sanción severa, juzgamos que el foro primario se excedió en su quehacer.

Segundo, independiente a lo anterior, consideramos que imponer como sanción al demandado el pago de la totalidad de los gastos de la menor al padre es errada. La EPA, rindió un informe en la cual propuso como sanción, que se le imputaran ingresos al progenitor, entre otros. Ese concepto de imputación de ingresos es distinto al que se le aplicó al demandado. Explicamos.

Es permitido **imputar ingresos**, conforme establece el Artículo 8 (1) (a) de las Guías Mandatorias, cuando existan indicios o señales de que la persona genera más dinero del que informa. En estos casos, se consideran diversos factores, entre ellos, el estilo de vida del alimentante, sus propiedades, su profesión, preparación académica, su historial de empleo y otros, para obtener un ingreso adecuado y otros.

El otro concepto, que fue el que aquí se aplicó, es el de la capacidad económica. En este, se le adjudica **la totalidad** de los gastos del alimentista al padre no custodio. Esta medida aplica en situaciones en que el alimentante declina divulgar sus ingresos y acepta **voluntariamente** su capacidad económica para suplir las necesidades de sus hijos. Este es inaplicable a este caso, pues el padre alimentante no admitió capacidad económica para

sufragar todos los gastos.  Así lo expresó la propia demandante en su moción solicitando sanciones.  Así que, a falta de aceptación, tampoco se le podía adjudicar al padre, como sanción, todos los gastos de la menor.  Además, la sanción, según aplicada, no está acorde al principio de proporcionalidad que rige en estos procesos. Esto porque el deber de suplir alimentos al menor es inherente a la paternidad, por tanto, recae **en ambos padres** tal obligación conforme a los recursos de cada uno.[20]  Así que, la sanción también trastocó este principio.

Por último, en cuanto a la alegación del peticionario respecto a error en el emplazamiento debido a que la recurrida conocía de su dirección y no lo informó. Revisamos el expediente y la recurrida no refutó estas alegaciones, a pesar de que el foro primario le concedió término para ello.  Por lo que, en aras de salvaguardar la pureza de los procesos, levantamos la anotación de rebeldía.  Ahora bien, como posteriormente el 16 de junio de 2025 el peticionario compareció voluntariamente a la videoconferencia, el foro primario adquirió válidamente jurisdicción sobre su persona a partir de ese momento.

Por todo lo anterior, procedemos a levantar la anotación de rebeldía contra el peticionario y revocamos la Sentencia y *Resolución* aquí recurrida.

## IV.

Por las razones antes expresadas, se revoca la Resolución y Sentencia contra la que aquí se recurre.  Se remite el asunto al foro primario para que ordene la continuación de los procesos. Que se fije la pensión alimentaria considerando la capacidad económica de los padres y las necesidades de la menor.

---

[20] Díaz Rodríguez v. García Neris, *supra.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones